IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMIN IJBARA EQUITY CORP, an Illinois Corporation et. al, | ) ) ) No. 13 C 9337 |
| Plaintiffs, | ) ) |
| v. | ) Judge Rebecca R. Pallmeyer ) |
| VILLAGE OF OAK LAWN, a Municipal Corp., et al.; | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Amin Ijbara Equity Corp. and Amin Ijbara (collectively, "Plaintiffs")[1] filed a seven-count complaint [1] against the Village of Oak Lawn, the Village of Oak Lawn Department of Water, and various Village officials and private parties (collectively, "Defendants"). (*See* Orig. Compl. [1].) Plaintiffs' complaint alleged generally that Defendants discriminated against Mr. Ijbara and his business. Defendants moved to dismiss [15] on a number of grounds, and the original complaint did suffer from a number of defects: it failed to identify the dates or even time frames when alleged events took placed, named improper parties, and otherwise failed to state claims for relief.

Plaintiffs filed a brief [22] in opposition to the motion, but later sought leave to file an amended complaint that appears to cure at least some of the deficiencies. (*See* First. Am. Compl. [27-1].) Though Defendants object (*see* Def.'s Resp. in Opp. to Pls.'s Mot. for Leave to File Am. Compl. [29], 2), the court grants Plaintiffs' motion for leave to file an amended complaint, *see* FED. R. CIV. P. 15(a)(2), and strikes Defendants' motion to dismiss without prejudice. Defendants are directed to answer or submit a responsive pleading to the amended complaint in 21 days.

## INTRODUCTION

The facts recounted here are drawn from Plaintiffs' First Amended Complaint. Amin Ijbara once owned a retail-shopping center (the "Plaza") in the Village of Oak Lawn. (First Am. Compl.

---

[1] Naim Massad, who was a Plaintiff in the original complaint, is not identified as a party in the First Amended Complaint. The court deems his claims withdrawn.

1

¶ 1.)  The dispute between Ijbara and the Village Defendants, Plaintiffs allege, had its origin in a conflict between Plaintiff and the owners of a liquor store who rented space from him in the Plaza, Defendants James Baker and Gregory Haraf.  (*Id.* ¶ 2.)  Baker and Haraf sought to renew their lease in March 2010, but Ijbara was unwilling to renew a lease that allowed liquor sales because kids from a nearby high school "cause[d] great deal of trouble for the Plaza by leaving alcohol and beer bottles in the parking lot and around the Plaza." (*Id.* ¶¶ 19, 22.)  Ijbara offered to renew Baker and Haraf's lease for the sale of groceries only.  (*Id.* ¶ 2.)

According to Plaintiffs, Baker and Haraf were "angered" by Ijbara's refusal and threatened to complain to the Village Mayor, Defendant David Heilmann, if Ijbara did not acquiesce.  (First Am. Compl. ¶ 19.)  At one point, Plaintiffs allege, Haraf even threatened to kill Ijbara.  (*Id.* ¶ 24.)  In November 2010, Plaintiffs assert, Mayor Heilman called Ijbara and "pressured" him to renew Baker and Haraf's lease; Heilman said that "it will be 'no good' and 'bad'" for Ijbara if Ijbara did not renew it.  (*Id.* ¶ 23.)

Plaintiffs assert that "[a]bout a week" after Ijbara spoke with Baker and Haraf about the lease renewal in March 2010, the Village Manager, Defendant Larry Deetjen, sent code inspectors to the Plaza.  During this visit, inspectors issued a "violation citation" that required Ijbara to install a new sprinkler system and fire system for the Plaza.  (*Id.* ¶ 20.)  Ijbara eventually did install new sprinkler and fire systems at some point at a total cost of $60,000.  (First Am. Compl. ¶¶ 27–28.)  Deetjen, however, claimed the repairs for both systems were inadequate and ordered more work to be performed.  (*Id.*)  Even then, Plaintiffs assert, the Village "was not satisfied with the repairs" and "continued to cancel and delay inspections" of the fire system.  (*Id.*)  According to Plaintiffs, the Village ultimately did not "approve" either repair.  (*Id.*)  Plaintiffs allege Heilman and Deetjen "sent these inspectors out of malice and ill will" because Ijbara refused to renew Baker and Haraf's lease. (First Am. Compl. ¶ 20.)  Deetjen came to the Plaza again in January 2011, Plaintiffs assert, this time with five Village inspectors.  (*Id.* ¶ 25.)  These inspectors "immediately started issuing various Code violations against the Plaza, which were based on frivolous inspections and bogus violations."

(*Id.* ¶ 25.)  Deetjen allegedly commented to some tenants in the building during this incident to the effect that it wasn't fair for Ijbara "to kick out the liquor store."  (*Id.*)

Later that same January, Deetjen allegedly asked Ijbara and Ijbara's construction contractor to come to his office for a meeting, where approximately ten other Village officials were present. (First Am. Compl. ¶ 26.)  At this meeting, Deetjen charged Plaintiffs with more code violations.  (*Id.* ¶ 27.)  Plaintiffs further allege that Deetjen required Ijbara to replace the Plaza's water pipes at a cost of $12,600, even though "the existing water pipes were functioning normally and they were in compliance with both the Village of Oak Lawn and the City of Chicago Codes."  (*Id.* ¶ 29.)  Deetjen allegedly claimed that Ijbara owed $10,000 on a water bill, when in fact the bill had been incurred by a prior tenant; Deetjen also allegedly improperly transferred to Ijbara a water bill incurred by a laundromat in the Plaza.  (*Id.* ¶¶ 33–35.)

Plaintiffs assert that Heilman and Deetjen succeeded in putting Ijbara out of business.  (First Am. Compl. ¶ 41.)  In fact, a Village official, Hasan Keshta, allegedly told Ijbara "that his prospective tenants' business applications in the Plaza were never processed and were never submitted to the Board of Trustees for a vote."  (*Id.* ¶ 30.)  One prospective tenant invested $10,000 in a Hershey Ice Cream shop in anticipation of opening a store at the Plaza, but Deetjen "refused to process [that tenant's] business license or forward it to the Village Board of Trustees for a vote."  (*Id.* ¶ 37.) Deetjen told the would-be tenant to get his $10,000 investment back from Ijbara.  (*Id.*)  Because the prospective tenants did not receive their licenses, the Plaza's average monthly rent roll fell from $38,000 in 2010 to $7,000 in 2011.  (First Am. Compl. ¶ 42.)  Also, according to Plaintiffs, "existing tenants . . . were forced to make repairs based on many bogus Code violations."  (*Id.*)  The drop in rent collection, coupled with expenses associated with making repairs for purported code violations, eventually resulted in Plaintiffs' being unable to make their mortgage payments for the Plaza property.  (*Id.*)  A judgment of foreclosure was entered against Plaintiffs on July 23, 2012.  (*Id.*)

**DISCUSSION**

Plaintiffs argue that the court should allow them leave to file an amended complaint because it includes more specifics concerning the dates of Plaintiffs' injuries, which will help the court determine when various causes of action accrued for the purposes of deciding whether the claims are time-barred. (Mot. for Leave to File Am. Compl. [27], 1.) The amended complaint, Plaintiffs contend, also sets forth the facts and their claims with more clarity. (*Id.*) Defendants contend that Plaintiffs' proposed amended complaint does not cure the defects contained within the original complaint. (*See* Def.'s Resp. to Pl.'s Mot. for Leave to File Am. Compl. [29], 2.)

A motion for leave to amend a complaint is evaluated under FED R. CIV. P. 15(a)(2), which provides that courts should "freely give leave when justice so requires." *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Nonetheless, where an amendment would be futile, the general rule does not apply. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

The court concludes Plaintiffs' motion for leave to amend should be granted. In reaching this conclusion, the court acknowledges that Defendants have challenged several aspects of Plaintiffs' original complaint, and some of those challenges have merit; but the amended pleading does address certain of the deficiencies effectively. For instance, in their original complaint, Plaintiffs pleaded violations of the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), but did not allege with particularity the elements required to state a claim under that statute. (*See* Orig. Compl. ¶¶ 80–89, 94–96.) The new complaint removes the RICO allegations. The original complaint also alleged a government-abuse-of-power claim without specifying the law or legal elements that applied to the claim, much less the factual content that might have supported it. (*See id.* ¶¶ 69–79.) This claim has been withdrawn as well. In

addition, Naim Massad (one of the Plaza's tenants who operated a grocery store) was a named plaintiff in the original action. (*Id.* ¶ 5). His inclusion raised troubling *res judicata* issues because Massad previously filed a lawsuit involving materially identical allegations to those asserted in the original complaint related to his grocery business. (*See* Def.'s Mem. in Support of Mot. to Dismiss Orig. Compl., Exs. 1–2 [18-1] [18-2], *Naim Massad v. Jeanne Foody Galzin, et al*, 10-cv-4385 (filed July 14, 2010 and dismissed July 5, 2011).) Massad's earlier lawsuit was dismissed with prejudice when he did not refile his complaint within a specified timeframe. (*See* Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. 2, Stipulation of Dismissal.) Massad is not named as a Plaintiff in the amended complaint. (*See* First Am. Compl.)

Lastly, the original complaint failed to plead *any* factual allegations concerning improper conduct by Defendant Village Trustees Alex Olejniczak, Robert Streit, Defendant Village Building and Zone Administrator Robert McKenna, or the Village Water Department. (*See generally* Orig. Compl.; *see* Def.'s Mem. in Support of Mot. to Dismiss Orig. Compl. at 14.) These parties have been removed from the amended complaint as Defendants.

In short, Plaintiffs have made substantial changes to the original complaint, in several instances addressing concerns raised in the motion to dismiss. Without commenting on the merits of the amended complaint, the court concludes the changes are sufficient to require a new responsive pleading. Defendants will be free to respond by way of an answer or further motion to the claims presented in the amended complaint, including two causes of action asserted for the first time in this new complaint: a claim under the Equal Protection Clause pursuant to 42 U.S.C. § 1983 (First Am. Compl. ¶¶ 44–49), and a claim of interference with reasonable business expectations. (*Id.* ¶¶ 61–64.) There may be defenses to these claims, including a timeliness challenge; at this stage, however, the court is unwilling to dismiss them without further briefing.

## **CONCLUSION**

For the reasons discussed above, the court grants Plaintiffs' motion for leave to file an amended complaint [27]. Defendants' motion to dismiss [15] is therefore stricken without prejudice.

Defendants have 21 days from the date of this order to answer or submit a responsive pleading to the First Amended Complaint.

                                  ENTER:

Date:  November 26, 2014                      _____
                                                 REBECCA R. PALLMEYER
                                                 United States District Judge