IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMIN IJBARA EQUITY CORP, an Illinois Corporation et. al, | ) ) ) |
| Plaintiffs, | ) No. 13 C 9337 ) |
| v. | ) Judge Rebecca R. Pallmeyer ) |
| VILLAGE OF OAK LAWN, a Municipal Corp., et al.; | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Amin Ijbara Equity Corp. and its owner, Amin Ijbara (collectively, "Ijbara") filed their initial seven-count complaint [1] against the Village of Oak Lawn, the Village of Oak Lawn Department of Water, and various Village officials and private parties. (*See* Orig. Compl. [1].) In the complaint, Ijbara alleged generally that Defendants discriminated against him and his business, but the pleading was deficient in a number of ways. *See Amin Ijbara Equity Corp. v. Village of Oaklawn*, No. 13-cv-9337, 2014 WL 6735446, *1 (N.D. Ill. Nov. 26, 2014) (noting that the original complaint "failed to identify the dates or even time frames when alleged events took placed, named improper parties, and otherwise failed to state claims for relief"). Defendants moved to dismiss [15], and Ijbara filed a memorandum in opposition to the motion, but then sought leave to file an amended complaint [27]. The court flagged the possibility of a timeliness challenge to the new action, *see Ijbara Equity Corp.*, 2014 WL 6735446 at *3, but found the amended complaint contained enough additional allegations and information to require a new responsive pleading. *Id.* The court therefore granted Ijbara's motion and struck Defendant's motion to dismiss without prejudice. *See generally Amin Ijbara Equity Corp.*, No. 13-cv-9337, 2014 WL 6735446.

Defendants now move to dismiss [49] the amended complaint, arguing that all of Ijbara's claims are barred on statute of limitations grounds. For the reasons discussed below, the court agrees and dismisses the amended complaint, with prejudice.

**BACKGROUND**

The facts of this case are laid out in the court's previous opinion, *see generally Amin Ijbara Equity Corp. v. Village of Oak Lawn*, No. 13-cv-9337, 2014 WL 6735446 (N.D. Ill. Nov. 26, 2014), but the court revisits them in some detail here because the timing and sequence of events is important to resolve Defendant's statute of limitations arguments.

Amin Ijbara once owned a retail shopping center (the "Plaza") in the Village of Oak Lawn, but disputes with certain Plaza tenants and later with Village of Oak Lawn officials caused his business to fail. (First Am. Compl. [34], ¶¶ 1–2.) Owners of a liquor store in the Plaza, Defendants James Baker and Gregory Haraf, approached Ijbara in March 2010, seeking a lease renewal for their store, which was set to expire on November 30, 2010. (*See id.* ¶ 19.) Ijbara refused to renew the lease: He asserts that he did not want liquor sold at the Plaza because kids from a nearby high school "cause[d] a great deal of trouble for the Plaza by leaving alcohol and beer bottles in the parking lot and around the Plaza." (*Id.* ¶¶ 2, 19, 22.) Ijbara offered to renew Baker and Haraf's lease for the sale of groceries only, but this did not improve relations: at one point, Ijbara alleges that Haraf threatened to kill him. (*Id.* ¶ 24.)

In any event, Ijbara alleges that "[a]bout a week" after Baker and Haraf approached Ijbara to discuss the lease renewal, Village Manager Larry Deetjen sent "inspectors" to the Plaza, who required Ijbara to install new sprinkler and fire systems, at a total cost of more than $60,000. (First Am. Compl. ¶¶ 20, 27–28.) According to Ijbara, "Defendants' implication was that if [Ijbara] renewed the Lease for the sale of liquor, then he would not have to change his sprinkler system and his fire system." (*Id.* ¶ 20.) Deetjen allegedly made comments to some of Ijbara's tenants to the effect that it wasn't fair for Ijbara "to kick out the liquor store." (*Id.*) Deetjen, Ijbara maintains, used this tactic of sending inspectors to the Plaza to jostle him at

least one more time: in January 2011, Deetjen arrived at the Plaza with more than five inspectors who proceeded to "issu[e] various Code violations against the Plaza, which were based on frivolous inspections and bogus violations." (*Id.* ¶ 25.) Later that same January, Deetjen requested a meeting of Ijbara, the Village's Chief of Police and Fire Chief, and eight other Village officials. (First Am. Compl. ¶ 26.) At that meeting, Deetjen "charge[d] [Ijbara] with numerous Code violations in the Plaza." (*Id.*)

Ijbara did eventually install new sprinkler and fire systems at some point in 2010 or 2011, but Deetjen claimed the repairs for both systems were inadequate and ordered that more work be done. (*Id.* ¶¶ 5, 27–28.) Even then, Ijbara alleges, the Village "was not satisfied with the repairs" and "continued to cancel and delay inspections" of the fire system. (*Id.* ¶ 28.) Deetjen further required Ijbara to replace the Plaza's water pipes at a cost of $12,600, even though "the existing water pipes were functioning normally and . . . were in compliance with both the Village of Oak Lawn and the City of Chicago Codes." (First Am. Compl. ¶ 29.) None of the repairs Ijbara paid for were ever approved by the Village. (*Id.* ¶¶ 27–28.) Deetjen also claimed that Ijbara owed $10,000 on a water bill, Ijbara alleges, when in fact the bill had been incurred by a prior tenant. (*Id.* ¶¶ 33–35.) Though the complaint cites dates only sporadically, the allegations reflect that all of this conduct occurred sometime between 2009 and 2011: the Plaza went into receivership in early February 2011, as discussed below.

According to Ijbara, Deetjen used his power as Village Manager to refuse to allow new tenants to move into the Plaza. One prospective tenant invested $10,000 in a Hershey Ice Cream shop in anticipation of opening a store, but Deetjen "refused to process [that tenant's] business license or forward it to the Village Board of Trustees for a vote." (*Id.* ¶ 37.) Deetjen then told the would-be tenant to get his $10,000 investment back from Ijbara. (*Id.*) Deetjen allegedly rejected two other prospective tenants by failing to process their business license applications: Ghassan Balote, who wanted to open a banquet hall; and Amjed Ramahi, who sought to open a day care center. (First Am. Compl. ¶ 40.)

Deetjen's campaign to put Ijbara of business succeeded. Because of Deetjen and the other Defendants' actions, Ijbara asserts,

> there was a reduction of the Plaza's average monthly rent roll from $38,000.00 in 2010, to $7,000.00 in 2011, as a result of not being able to obtain a business license for any of the Plaza's prospective tenants. This fact, together with Amin spending $67,600.00 for alleged Code violations, resulted in Amin not being able to pay the monthly mortgage payments, which in turn resulted in the Bank obtaining a judgment of foreclosure and sale, entered on July 23, 2012. (*Wells Fargo Bank, N.A., v. Amin Ijbara Equity Corp.*, et al., Case No. 11 CH 06459).

(First Am. Compl. ¶ 42.) Athough the court does not generally consider matters outside the pleadings in resolving a motion to dismiss, *see Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), it may consider "documents that are central to the complaint and are referred to it in it, and information that is properly subject to judicial notice." *Id.* Because Ijbara mentioned the foreclosure proceedings in his amended complaint, the court will review certain documents from those proceedings that Defendants have included as exhibits to their memorandum in support of their motion to dismiss the amended complaint.

The foreclosure action was originally filed on February 22, 2011. (*See* Docket, *Wells Fargo Bank, N.A. v. Amin Ijbara Equity Corp., et al.*, No. 2011-CH-06459, Ex. 1 [50-1] to Def. Mem. in Supp. of Mot. to Dismiss [50].) Plaintiffs were served on March 9, 2011, and on April 22, 2011, an attorney for Ijbara filed an appearance. (*Id.*) On April 22, 2011, the state court appointed a receiver to manage the property. (Order Appointing Receiver, *Wells Fargo Bank, N.A. v. Amin Ijbara Equity Corp., et al.*, Ex. 2 [50-2] to Def. Mem. in Supp. of Mot. to Dismiss.) The court's order directed the receiver to collect rents and otherwise act to preserve the value of the estate. (*Id.*)

A Village official, Hasan Keshta, told Ijbara at some point prior to the foreclosure action "that [Ijbara's] prospective tenants' business applications in the Plaza were never processed and were never submitted to the Board of Trustees for a vote." (First Am. Compl. ¶ 30.) Also, according to Ijbara, at unknown times, but presumably preceding the reduction in rent rolls he mentions elsewhere, "existing tenants . . . were forced to make repairs based on many bogus

4

Code violations." (*Id.*) The drop in rent collection, coupled with expenses associated with making repairs for purported code violations, eventually resulted in Plaintiffs' being unable to make their mortgage payments for the Plaza property. (*Id.*) A judgment of foreclosure was entered against Plaintiffs on July 23, 2012. (*Id.*)

## **PROCEDURAL HISTORY**

Ijbara filed the initial complaint on December 31, 2013. (*See* Orig. Compl.) Defendants moved to dismiss it (*see* Def. Mot. to Dismiss [18]), but the court struck Defendants' motion without prejudice and granted Ijbara's motion to file an amended complaint on November 26, 2014. (*See* Mem. Op. & Order [33].) After Ijbara voluntarily dismissed claims against Defendant David Heilmann (*see* Order Feb. 24, 2015 [61]), the following Defendants remain: the Village of Oak Lawn, a municipal corporation; Larry Deetjen, in his individual capacity and his official capacity as Manager of the Village of Oak Lawn; Jean Galzin, in her individual capacity and her official capacity as Code Enforcement Officer of the Village of Oak Lawn; and private individuals James Baker and Gregory Haraf.

Ijbara alleges several claims against Defendants. Counts I and II assert equal protection and procedural and substantive due process violations against the Village of Oak Lawn, Larry Deetjen, and Jean Galzin. (*See* First Am. Compl. ¶¶ 44–54); 42 U.S.C. § 1983. Count III alleges a civil conspiracy between private actors Defendants Baker and Haraf, the owners of the liquor store, and government entities and individuals, including the Village of Oak Lawn, Deetjen, and Galzin. (First Am. Compl. ¶¶ 55–60); 42 U.S.C. § 1985(3). Count IV asserts, against all Defendants, a state common law tort claim of interference with Ijbara's reasonable business expectations. (First Am. Compl. ¶¶ 61–64.) Ijbara seeks more than $5 million in compensatory damages and more than $10 million in punitive damages for each count. (*Id.* ¶¶ 49, 54, 60, 64.)

## **DISCUSSION**

Rule 12(b)(6) allows a party to seek dismissal of a complaint for "failure to state a claim

5

upon which relief can be granted." When resolving a 12(b)(6) motion, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable factual inferences in favor of the non-moving party. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 761–62 (7th Cir. 2012). The court does not ask whether Plaintiff will ultimately prevail; rather, it asks whether he is entitled to offer evidence to support his allegations. *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999). A statute of limitations defense is not ordinarily part of a Rule 12(b)(6) motion, but "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011). A plaintiff can effectively "plead[] himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). Where, as here, the relevant dates of the events giving rise to the claims are clearly set out in the allegations in the complaint, the court may consider dismissal based on a statute of limitations defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("We find it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint.")

Neither § 1983 nor § 1985 have express statutes of limitations, but federal courts adopt the forum state's limitations periods for such claims. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Illinois statute of limitations for both §§ 1983 and 1985 actions is two years. 735 ILCS 5/13–202; *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992); *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). The statute of limitations for Ijbara's state tort claim for interference with business expectations is one year. *See* 745 ILCS 10/8–101. Thus, any claims that accrued prior to December 31, 2011 (two years before Ijbara filed his initial complaint on December 31, 2013), are barred by the applicable statute of limitations.

While courts apply the tolling laws of the state where the injury occurred, *see Kelly*, 4 F.3d at 511, federal law governs the accrual of claims. *See id.* Claims "accrue when the

6

plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* The court uses a two-step inquiry to determine the accrual date: (1) the court identifies the injury; and (2) the court determines the date when the plaintiff could have sued for that injury, which "should coincide with the date the plaintiff 'knows or should know' that h[is] rights were violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004).

Under these principles, all of Ijbara's claims must be dismissed as time-barred. First, the injury: according to Ijbara, the injury identified in the complaint, and reiterated in the response brief to Defendants' motion to dismiss, is the loss of the Plaza property due to Defendants' actions. (*See, e.g.*, First Am. Compl. ¶ 5 (Defendants' actions "resulting in [Ijbara] not being able to pay the monthly mortgage payments, which in turn resulted in the Bank obtaining a judgment of foreclosure and sale[.]"); *id.* ¶ 42 (same); Pl. Resp. to Def. Mot. to Dismiss [58], 2 (Plaintiff suffered an injury when "Plaintiffs lost their title or ownership of their real property[.]").)

Second, the date on which Ijbara could have sued for that injury: *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993), provides guidance on this issue. In that case, the City of Chicago's Liquor License Commission entered an order revoking a bar's liquor license because of a pending criminal investigation related to drug dealing at the bar. *Id.* at 510. The Commission entered the revocation order on September 1, 1988, but delayed enforcing it pending an appeal to state court; once the state court affirmed the revocation order, the Commission closed the bar on July 27, 1989. *Id.* The bars' owners were later acquitted of the drug dealing charges and sued the City and several police officers on November 15, 1990, alleging that defendants had violated their federal due process rights by revoking their liquor license. *Kelly*, 4 F.3d at 510. The district court dismissed the claim as time-barred, reasoning that the two-year statute of limitations began to run on September 1, 1988, when the revocation order was entered. *Id.* Because plaintiffs filed their action more than two years after that date (on November 15, 1990), their suit was untimely. *Id.*

The Seventh Circuit affirmed. In doing so, the Court of Appeals rejected plaintiff's primary argument that the statute of limitations began to run only when the Commission actually enforced the revocation order and closed the bar on July 27, 1989 (which would have brought their suit, filed on November 15, 1990, within the two-year window). *Id.* at 511. Instead, the court emphasized that for the purposes of determining the accrual date, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Id.* at 512 (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original)). In other words, "the date of the alleged constitutional violation—the revocation of the license— was the date of accrual. The date the consequences of that violation became painful—when the bar was closed because it was operating without a liquor license—was not the date of accrual." *Kelly*, 4 F.3d at 512.

Similar to the plaintiffs in *Kelly*, Ijbara argues that the accrual date should begin when a judgment of foreclosure was entered against the Plaza and he lost legal title to the property, not when foreclosure proceedings were simply initiated. (*See* Pl. Resp. to Def. Mot. to Dismiss at 2.) But *Kelly*'s facts and analysis are too similar to this case to suggest a different outcome. Importantly, Ijbara has alleged that Defendants took discriminatory action against him at least as early as December 2010, stating that "Defendants were able to prohibit any prospective tenants from moving into the Plaza after December 2010." (First Am. Compl. ¶ 4.) Further, the inspections that Deetjen ordered took place in January 2011, as did the meeting with several Village of Oak Lawn officials to discuss the Plaza's violations. (*Id.* ¶¶ 25–26.) And the trumped-up water bill charges were also sent to Ijbara sometime in 2011. (*Id.* ¶ 33.)

Perhaps most important for determining the accrual date, though, are the Illinois state court orders involving the foreclosure proceedings against the Plaza. As explained above, the foreclosure lawsuit was originally filed on February 22, 2011. (*See* Docket, *Wells Fargo Bank, N.A. v. Amin Ijbara Equity Corp., et al.*, No. 2011-CH-06459, Ex. 1 to Def. Mem. in Supp. of Mot. to Dismiss.) On April 22, 2011, a receiver was appointed to manage the property. (Order

Appointing Receiver, *Wells Fargo Bank, N.A. v. Amin Ijbara Equity Corp., et al.*, Ex. 2 to Def. Mem. in Supp. of Mot. to Dismiss.) Much like the day the revocation order issued in *Kelly* (but before it was enforced), the appointment of a receiver to manage the Plaza (but before a judgment of foreclosure was entered) constitutes the latest possible date on which Ijbara knew or should have known that his rights had been violated. *See Kelly*, 4 F.3d at 512 (noting that the revocation order was the date of accrual, not the day the order was actually enforced). As the initial complaint was filed in this case on December 31, 2013—more than two years after the discriminatory actions occurred—the claims are time-barred.

Ijbara's argument that the accrual date did not start until a judgment of foreclosure was entered is not persuasive. He cites 12 U.S.C. § 1813(j), which defines a "receiver" as a person or entity "charged by law with the duty of winding up the affairs of a bank or savings association or of a branch of a foreign bank." He also cites Black's Law's definition of receiver, as "[a] person appointed by a court or judicial officer to take charge of property during pendency of a civil action, suit, or proceeding, upon a judgment, decree, or order therein, to manage and dispose of it as the court or officer may direct." (Pl. Resp. to Def. Mot. to Dismiss at 4.) He claims, based on these definitions, that appointment of a receiver is not relevant "because the Plaintiffs ha[d] not lost legal title or ownership of the property." (*Id.*) This language does not satisfy the court that the accrual date in this case is the date on which the judgment of foreclosure was entered. Indeed, § 1813(j) states expressly that a receiver is tasked with "winding up the affairs" of a financial institution, meaning that upon appointment of a receiver, the institution's owners are deprived of any day-to-day control of the institution's assets absent a full payment of the balance due and owing on the mortgage for the Plaza. The alleged discriminatory actions had deprived Ijbara of his business, but it was the actions themselves, beginning nearly three years prior to filing suit, and possibly more, that triggered the statute of limitations clock. Tellingly, Ijbara does not even attempt to distinguish *Kelly*, which emphasizes that it is the discriminatory conduct that starts the clock, not when the harmful consequences

stemming from such actions come to fruition.  Regardless, in this case, *both* the discriminatory conduct taken against Ijbara *and* the consequences flowing from such conduct manifested more than two years prior to filing his complaint.  His claims are therefore time-barred.

## **CONCLUSION**

For the reasons discussed above, the court concludes that all of Plaintiff's claims must be dismissed on statute of limitations grounds.  Defendants' motion [49] is therefore granted, and Plaintiffs' first amended complaint is dismissed.

ENTER:

Date:  July 27, 2015

_____
REBECCA R. PALLMEYER
United States District Judge